### FAYETTE SIMPSON v. THE STATE.

#### No. 2863.    Decided December 9, 1903.

##### Motion for Rehearing Decided December 16, 1903.

**1.—Rape—Evidence—Age of Prosecutrix—Predicate.**

On a trial for rape, where the court permitted the family Bible of the father of prosecutrix to be introduced in evidence to show the date of the birth of prosecutrix, the father having testified, as a predicate therefor, that he made the entry in this Bible within the year of her birth, and that it was correct, and that the same had not been out of his possession at all during the time; Held, the evidence was admissible.

**2.—Evidence—Bill of Exceptions—Acts of Third Parties.**

Where it was stated in a bill of exceptions that "the State" offered to prove by a certain witness certain testimony set out, Held, the bill was defective in that it does not affirmatively appear that the State did prove the facts stated; but the testimony was admissible, the parties being together immediately before and at the time, and the acts of the parties occurring in the presence of defendant should not be excluded.

**3.—Same—Age of Prosecutrix—Presumption.**

A bill of exceptions to the answer of a witness as to their opinion as to the age of prosecutrix, is defective which does not show what the answer would have been but leaves it a matter of conjecture. Held, no presumption can be indulged in by the court to make bills. of exception perfect.

**4.—Same—Practice—Prejudice.**

On a prosecution for rape, where the prosecutrix was asked without objection as to when she became engaged to marry defendant, which she answered, and defendant objected to all the testimony relating to an engagement or promise to marry her, on the ground that same was immaterial, irrelevant and calculated to prejudice defendant's rights before the jury. Held, there being no request to withdraw, or motion to exclude the evidence already in, there was no error in not excluding same, even though the testimony might have been of a prejudicial character.

**5.—Same.**

On a prosecution for the rape of a female under the age of 15 years, a bill of exceptions taken recited that the State "offered" to prove knowledge of the defendant's marriage by asking the prosecutrix, "What did he say, if anything, about being married?" and his answer "that it was said that he was, but that he was not," and she believed what he said, all of which was objected to on the ground that the prosecution was for a rape upon a female alleged to be under the age of consent, and not predicated on force, threats or fraud, and that same was prejudicial to him before the jury. Held, there being no certificate of the judge that such facts "offered" to be proven were proven, the bill can not be considered.

**6.—Same—Charge of Court—Argument of Counsel.**

Where testimony by defendant has been admitted without objection, and the district attorney refers to same in his argument before the jury, and counsel for defendant stated to the court that he would take a bill to the argument, but did not request the court to prevent the district attorney from using the argument, or to withdraw the testimony. Held, the refusal of the court to charge the jury not to consider same because the evidence had not been objected to, and was of record, was without error.

ON MOTION FOR REHEARING.

**7.—Same—Evidence—Res Gestae.**

Where on a trial for rape the testimony of the prosecutrix was that she did not know appellant was a married man when she became engaged to him, and that he so represented to prosecutrix at the time, Held, this would be part of the res gestae of the transaction, showing the purpose and intent of appellant, and the reasons actuating prosecutrix in consenting to the act.

**8.—Same—Objection to.**

On a trial for rape, over objection of defendant, it was proper to prove that defendant had promised to marry prosecutrix; that he had assured her he was not a married man, as these facts could be legitimately used by the jury in measuring the amount of punishment to be assessed against defendant. Held, such testimony was not of a character likely to injure appellant. Distinguishing Smith v. State, 5 Texas Ct. Rep., 372.

**9.—Same—Res Gestae.**

Where, on a trial for rape, the testimony of the prosecutrix was that she did not know appellant was a married man when she became engaged to him, and he having represented to her that he was not at the time she consented to the act; Held, such testimony tended to intensify the punishment likely to be inflicted by the jury, and that if it was permissible for the State to make the above proof, it was germane and legitimate for appellant to prove that she had been notified that he was a married man, and it was error for the court to refuse to permit him to do so.

Appeal from the District Court of Hamilton. Tried below before Hon. N. R. Lindsey.

Appeal from a conviction of rape of a female under the age of 15 years; penalty, fifteen years confinement in the penitentiary.

The following facts in addition to those stated in the opinion were introduced:

V. A. Roberts, father of prosecutrix, after having fully identified the Bible offered in evidence, testified: "She is 14 years old now. She has been 14 years old from the 18th day of last January. She was born in 1889. * * * I made a record of her birth in my family Bible soon after she was born. What makes me think I did that, I had an old record for my first family, and I see the name of my son Tommie in here, and he was born in 1886, and I bought this Bible in 1888. I transferred the date of his birth to this Bible and put the others down as they came. Have the Bible here. Here is the entry of the date of the birth of my daughter, Mattie Lou. I wrote it in here. It is in my handwriting. Yes, that entry there is intended for Mattie Lou Roberts. It is written Martha L. Roberts, but every one calls her Mattie Lou; it is the same girl. I put these entries down in rotation as the children were born— that was my custom. When I made that entry, I knew it (the date of her birth) at that time, and I made it correctly. These entries are all correct. I know the ages of my children."

The State offered the record identified by the witness V. A. Roberts in evidence, and read therefrom the following entry: "Martha L. Roberts; borned Jany. 18th, 1889."

Mattie Lou Roberts, the injured female, testified: "My name is Mattie Lou Roberts; I am now 14 years old. Was 14 on the 18th of last January. I know the defendant, Fayette Simpson, and have known him

for about five months. The defendant, Fayette Simpson, has had carnal intercourse with me. I know what is meant by the term 'carnal intercourse.' The defendant, Fayette Simpson, had carnal intercourse with me on the 17th day of May, 1903. I know where Mr. Ledwell lived at that time; he lived in Hico, Texas. The defendant had carnal intercourse with me in Amanda Ledwell's room, about 12 o'clock at night. This was in Hico, in Hamilton County, on the night of Sunday, the 17th day of May, 1903. His male organ penetrated my female organ. There was no one in the room at the time except he and I. * * * I am Amanda Ledwell's cousin. Amanda had a separate room to herself at her father's house. Fayette Simpson brought me to her home that evening. He ate supper there with us, and stayed there until about 10 o'clock and left and said he was going down to the oil mill. After he left, Amanda and I undressed and went to bed in the room. I next saw defendant about 12 o'clock that night. There was no one with him. He came in Amanda's room with me. Amanda was not in the room when he came in. John Woods came there after Amanda Ledwell. He came and talked to me awhile and then went down to the vacant house where Amanda had gone. Fayette Simpson was not in the room then. In just a little while after John Woods left, Fayette Simpson, the defendant, came in the room. I had on my night clothes and was in bed. The defendant got in the bed with me. In the the the bed there was where he had intercourse with me. We stayed there together about twenty-five minutes—probably half an hour. Defendant did not take off his clothes. He had on a coat. Did not take off the coat until we went over to the vacant house. After we got through in the room we went to the vacant house. There are three rooms in the house. Fayette Simpson and I went to the vacant house some time after 12 o'clock at night. We found Amanda there. I think we stayed down there about two hours. John Woods came there while we were there. There was no light in the house. * * * Defendant and I were in one of the back rooms. All the rooms adjoin each other. After a while John Woods and Amanda left the house; that left defendant and I there. We stayed there about twenty minutes after they left. This was in Hico, in Hamilton County, Texas. On that day I first saw Fayette Simpson at my father's house. He came there about 2 o'clock. Page Henderson, Ella Henderson, Amanda Ledwell, and my father's family were at the house that day. I did not see the defendant leave. Page Henderson, Ella Henderson, Tommie Roberts, Amanda Ledwell and myself left the house in a wagon going to Hico before defendant left. Page was driving the wagon. He came to our house in a buggy and we left him there. When about a mile and a half from home defendant drove up behind the wagon in his buggy and asked me to get out and ride with him. He had been to our house one time before this. He wanted me to marry him; he said he loved me. I had consented to marry him. He said, they all said that he had been married but that he had not. I believed what he

said about it. We went to Clairette, the others drove on, going south, and defendant and I drove off west. He asked me if I was ready to marry him. I told him yes. * * * We just kept driving around. When I told him I was ready to marry him, he said all right, that we would go and marry. * * * This all occurred on Sunday, May 17, 1903. I was not the wife of the defendant, and have never been. He had carnal intercourse with me in Hamilton County, Texas."

On cross-examination she stated: "I swore to Mr. Herring, justice of the peace, that defendant never had intercourse with me but one time, and that that was in Erath County, near the Bosque River, and that he took me out of the buggy in his arms by force, and took a laprobe and carried me through a three-barbed wire fence some two hundred or two hundred and fifty yards away. I never said how many times defendant had intercourse with me, I said that was the only time in that county. Am sure I qualified it that way. The reason I did not tell him what defendant did to me in Hico was because I hated to. Do not remember his asking if defendant had ever had intercourse with me except the time I told him about. It is true that defendant took me by force out of the buggy, in his arms, and took a laprobe and carried me some two hundred and fifty yards, through a three-barbed wire fence, into a thicket, and had intercourse with me against my consent. * * * When defendant's male organ penetrated my female organ it gave me severe pain. I did not 'holler.'"

Re-examined by State, she said: "He did not say anything about having intercourse with me until we got down in the brush. There was a wire fence along there and he picked me up and set me down over the fence. He had hugged and kissed me before that time. Do not know how many times before that he told me he loved me. I was engaged to him the Sunday before this. That was the first time he ever had intercourse with me. That was in the afternoon of the day we went to Hico. When we went there he said I would have to wait until the last of the month to marry him. He told me that while we were going to Aunt Samantha's after he had intercourse with me the first time. I told Amanda next morning that defendant had intercourse with me that night in her room."

No further statement required.

*J. M. Carter,* for appellant.—The court erred in permitting, over the objections of the defendant, the following questions to be asked by the State's attorney and the following answer to be made by the witness Mattie Lou Roberts: "When had you become engaged to marry the defendant?" A. "The Sunday before May 17, 1903." Because the same is immaterial, irrelevant and calculated to prejudice the rights of defendant before the jury.

The above question and answer was objected to at the proper time.

because the testimony sought to be elicited was immaterial, irrelevant, and was calculated to prejudice the defendant's rights before the jury.

White's Penal Code, art. 633, that part of which the State relies upon to sustain a conviction, reads as follows: "Rape is the carnal knowledge of a female under the age of fifteen years, other than the wife of the person, with or without her consent, and with or without the use of force, threats, or fraud."

The statute above quoted announces it as fundamental law that in a prosecution for rape upon a female under the age of 15 years, it is immaterial whether the act was committed with or without the prosecutrix's consent, and with or without the use of force, threats or fraud. Then if said testimony under the law was immaterial and prejudicial to the defendant's rights, is it not cause for reversal? Especially where they seek to make out a case for seduction against the appellant in a trial for rape. Besides, this proof is not responsive to the pleadings of the State, and is therefore not admissible. We understand the rule to be that where immaterial testimony has been admitted, if it is highly inflammatory and calculated to prejudice the defendant's rights before the jury, then it is highly improper and is cause for reversal. What class of evidence could be more highly prejudicial to defendant's rights than to prove, in addition to an act of carnal knowledge, that such act had been induced by the false promises of marriage, virtually showing to the jury that in connection with the crime of statutory rape defendant had induced the carnal knowledge of the female by false promises of marriage?

Where a family record fails to show that the date of the child's birth is set down at the time of the birth of said child, and fails to show that the birth and ages of all persons whose names appear therein were set down contemporaneously with their births, then such record is not admissible, because the only way then to ascertain the ages of the children would be by proofs de hors the record. Proofs of marriage on the part of the defendant at the time of the commission of the alleged rape, and that he made false promises to prosecutrix in reference to marrying her before and at the time of having intercourse with her, is inadmissible and is ground for reversal where the prosecutrix is under 15 years of age, because the question of consent, force, threats and fraud are immaterial in such a case. Smith v. State, 5 Texas Ct. Rep., 372.

Where the prosecuting attorney makes highly inflammatory remarks to the jury, and the defendant request a written instruction from the court that the jury should not consider such remarks, and the court refuses such instructions, and said remarks were unwarranted by the evidence, it is reversible error.

*Howard Martin,* Assistant Attorney-General, for the State.—The court did not err in admitting the record of prosecutrix's age, as shown in the

family Bible. The evidence clearly shows that the record was properly authenticated.

The court properly admitted the testimony complained of. It appears that prosecutrix, Amanda Ledwell, John Woods and appellant were all acting together on this occasion, and that it was necessary to show the acts of each of them, especially those which occurred in the presence and with the knowledge of appellant in order to fully develop the transaction.

Referring to bill number 8, set out in full in the opinion, it is contended this is the serious question in this case, inasmuch as the jury did not assess the lowest punishment. The State submits, however, that this testimony was admissible for the purpose of affecting the credibility of the prosecutrix as a witness; that is, it tends to show that she was not a prostitute; that she yielded her virtue on account of the persuasions of appellant and under the promise of marriage, which to some extent is in excuse or mitigation of her conduct. Without this testimony the jury might have concluded that prosecutrix had shown by her own conduct that she was not worthy of belief, but with it they were more likely to believe her statement. For this reason the State was entitled to this testimony. And again we would suggest that if this testimony were erroneously admitted, it does not constitute reversible error, for the reason that appellant took the stand and admitted her testimony on this issue to be true.

BROOKS, JUDGE.—Appellant was convicted of rape upon Mattie Lou Roberts, a girl under the age of 15 years; and his punishment assessed at confinement in the penitentiary for a term of fifteen years.

The fourth bill complains that the court erred in permitting the family Bible of the father of the prosecutrix to be introduced in evidence. As a predicate for its introduction, the father testified that he entered the date of the birth of prosecutrix in this family Bible somewhere within the year after her birth, and that the entry was correct. The Bible had been in his possession all the while, and that he in person made this entry. This testimony was admissible.

Bill number 5 complains that the State "offered" to prove by Mattie Lou Roberts the following: "Q. When defendant came in the room that night, was Amanda Ledwell there? A. No, sir. Q. Did any one come back there to the house with defendant when he came? A. No, sir. Q. How came Amanda Ledwell to leave the room? A. John Woods came in there after her." To which appellant objected because said evidence is irrelevant and immaterial, and calculated to prejudice the rights of the defendant before the jury; and, further, because any testimony as to what John Woods and Amanda Ledwell did is incompetent. The court qualifies the bill as follows: "That the evidence showed that John Woods and defendant had been together talking to each other immediately before defendant went to the room of the prosecutrix." This

bill is defective in that it states that the State "offered to prove." It does not affirmatively appear that the State did prove the facts above detailed, unless the explanation of the court by inference shows the same was proven. However, in our opinion, this testimony was admissible. Defendant and John Woods being together immediately preceding and being together at the time, we know of no rule of evidence that would exclude the acts of the parties occurring in the presence of defendant.

Bill number 6 complains that the court erred in excluding the testimony of defendant to the effect that prosecutrix had been notified that defendant was a married man. Appellant insists this testimony is admissible in view of the fact that the State's testimony tended to show prosecutrix was decoyed and deceived by defendant, who had led her to believe that he would marry her. There was no error in the ruling of the court. It is a felony per se to have carnal knowledge of a female under the age of 15 years, with or without her consent, and with or without the promise of marriage; and it becomes immaterial whether prosecutrix thought defendant was a married man. The question of marriage is not an issue in this case. We held in Smith v. State, 5 Texas Ct. Rep., 372, it was reversible error for the court to permit the State to prove defendant was a married man. Clearly such testimony would not be admissible for defendant. The seventh bill complains that "defendant offered to prove by witness J. H. Herring as follows: 'Q. While Mattie Lou Roberts was before you as justice of the peace, did you observe her general appearance, manner and conversation, her height, etc.? A. Yes, sir. Q. Did you observe her closely? A. Well, no; I do not know that I did. Q. With reference to her age, did you observe her closely? A. Yes, sir. Q. In your best judgment, based on the observations you made of her there, what is the girl's age?' To which counsel for State objected, and the court sustained said objection, and refused to permit said question to be answered by said witness." The court appends this qualification: "I wish to add to this bill my reason for the above ruling. The prosecutrix was before witness Herring in May, 1903. She was on the stand as a witness, and the jury could judge of her age from her appearance, it seemed to me, as well as the witness. I allowed the defense to prove by witnesses who had seen and observed prosecutrix, years ago, how old they then took her to be, but sustained the objection to the testimony on the ground that witness was not an expert and had seen witness only a few months before the trial." Similar testimony was "offered by the defendant" from witnesses Keller and Read as shown by bills numbers 10 and 11. Each of these bills state the defendant "offered to prove." Neither of the bills state what the witness would have answered as to prosecutrix's age. So all the bills are defective. However, we do not desire to be understood as holding it would not be proper for witness to testify as to the physical appearance, physical development and apparent age of prosecutrix at any time during the pendency of the prosecution. It is true, as the learned trial judge says, the testimony of

witness as to the physical appearance of prosecutrix prior to the prosecution is admissible, but we can not agree to the proposition that a witness who had observed the physical development of prosecutrix could not take the stand and testify to his opinion as to her age. Suppose a prosecution is pending against an accused for rape upon a child under 15 years of age, and the testimony of the State is based solely upon the opinion of witnesses as to the age of prosecutrix, and there is no positive testimony going to show her age; that is, no witness testified he was present at the birth of prosecutrix. Clearly, under such a condition, the State would be permitted to put witness on the stand to testify, from the general development and general appearance of prosecutrix, as to her age. This being true, it follows that the defense could controvert this by similar testimony. In this character of prosecution testimony of this sort would necessarily be resorted to pro and con in order to establish or refute the case. But the bills before us are defective, inasmuch as the answers of the witnesses as to their opinion of the age of prosecutrix are not given, and we are left to conjecture to say what the answers would have been. By a long line of authorities it has been held we are not permitted to indulge presumptions to make bills of exception perfect.

Bill of exceptions number 3 complains of the following: While prosecutrix Mattie Lou Roberts was on the stand she was asked: "When had you become engaged to marry defendant? A. The Sunday before May 17, 1903." To which appellant objected as to all the testimony of witness as to whether defendant had agreed or promised to marry her, because the same is immaterial, irrelevant and calculated to prejudice the rights of defendant before the jury. The court appends this explanation: "The above testimony was given after prosecutrix had testified, without objections, that she was engaged to be married to defendant at the time he had the carnal connection with her; when the question was asked defendant's counsel made the objection. There was no request to withdraw, or motion to exclude the evidence already in, but the exception as above stated." Under the explanation of the court we do not think there was any error in the ruling, even if it be conceded that the testimony is of a prejudicial character. However, we do not think it is.

By bill number 8 it is shown: "The State offered to prove the following facts by witness Mattie Lou Roberts: 'Q. Had defendant ever called on you before? A. He had been to our house once before. Q. What had he said to you up to that time? A. He wanted me to marry him. Q. What did he say, whether or not that he loved you? A. He said he loved me. Q. State whether or not you had consented to marry him? A. Yes, sir; I had. Q. What did he say, if anything, to you about being married? A. He said they all said he had been married, but he had not. Q. Did you believe what he said about that? A. Yes, sir.' To all of which defendant objected, because this is a prosecution for rape on a female alleged to be under the age of 15 years and not a prosecution predicated on force, threats or fraud; and because imma-

terial, irrelevant and calculated to prejudice the rights of defendant before the jury." It will be observed that this eighth bill says, "The State offered to prove." There is no certificate by the judge that such facts were proven, unless we indulge the presumption, which we will not do. This bill being defective, the same can not be considered.

Bill number 13 complains of the court's refusal of the following special charge, to wit: "You will not consider the language of the district attorney for any purpose where he tells you that the defendant was running with John Wood, a rapist. John Wood is now under sentence to the penitentiary for a term of fifteen years; birds of a feather will flock together." Defendant objected to this argument of counsel at the time it was made, and the court having declined and refused to give said instruction, defendant excepted. The court appends the following explanation to the bill: "Defendant, when on the stand as a witness, testified that he had known John Wood for three or four years, and that he was in company with him at the oil mill the night of the alleged rape, after he, defendant, left the house of old man Ledwell's; and that he again, about midnight, met Wood in front of Wood's house, and there had a conversation with him, and that he (defendant) then went to the room of prosecutrix, and after staying there twenty minutes, took prosecutrix in her night clothes across the street to a vacant house, and there met Wood with Amanda Ledwell; and they remained there for two or three hours; that Woods had been convicted at this term of the court for rape in three cases, and sentenced. This testimony was given by defendant without objections. When the district attorney referred to it in his argument to the jury, counsel for defendant approached the court and stated that he would take a bill to the argument; and then inquired of the court if there was any testimony to that effect. The court informed counsel that defendant had so testified. Counsel said no more, did not ask that the testimony be withdrawn, or that district attorney be prevented from using the argument, and I refused to give the charge because the evidence was in the record without any objection." In view of the qualification of the court there was no error in this ruling. There was no error in the court's action overruling the application for continuance as shown by the record before us.

No reversible error appearing in the record, the judgment is affirmed.

*Affirmed.*

### MOTION FOR REHEARING.

BROOKS, Judge.—This case is now before us on rehearing. Appellant insists that we were in error in holding the eighth bill of exceptions defective as set out in the original opinion. In this he is correct, as the bill contains this statement: "To the action of the court overruling said objections and admitting said evidence defendant" excepted. Now, the question arises, was the testimony admitted of a character likely to injure appellant? We say not. It was germane and proper to prove that ap-

pellant had promised to marry prosecutrix; it was proper to prove that appellant assured prosecutrix he was not a married man. These are facts that could be legitimately used by the jury in measuring the amount of punishment to be inflicted upon appellant. This case can be distinguished from Smith v. State, 5 Texas Ct. Rep., 372. In Smith's case, there was no question but that prosecutrix knew Smith was a married man, and hence the fact of his marriage could only be used to prejudice him, and could not and would not throw any light upon the motive, animus or additional mendacity of the act. If the fact that defendant was not a married man, and he so represented to prosecutrix, this would be part, as it were, of the res gestae of the transaction, showing the purpose and intent of appellant, and giving a reason on the part of prosecutrix for consenting to the lascivious embrace of the appellant. However, in view of the fact that this testimony is admissible, we deem it necessary to review bill of exceptions number 6, as stated in the original opinion. In that, appellant insists that the court erred in refusing to permit him to prove that prosecutrix had been notified that defendant was a married man. In the original opinion we held this was not admissible. In this we were in error. If it was permissible on the part of the State to prove that prosecutrix was engaged to marry appellant, and to prove that she did not know he was married, clearly it was germane to that issue for appellant to prove that she did know he was married. The fact of the engagement of appellant to prosecutrix could be used to intensify and increase the punishment. Certainly it was legitimate for appellant to disprove that portion of the testimony which goes to intensify the punishment. Hence it follows that the court erred in refusing to permit appellant to prove that prosecutrix had been notified that defendant was a married man. In this particular the original opinion was wrong. The motion for rehearing is accordingly granted, and the judgment is reversed and the cause remanded.

*Motion granted and judgment reversed and cause remanded.*